626 A.2d 1224

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Richard GOLINSKY, Appellee.**

Superior Court of Pennsylvania.

Argued March 24, 1993.

Filed June 21, 1993.

320

Kemal A. Mericli, Asst. Dist. Atty., Pittsburgh, for Com., appellant.

Steven Savor, Jr., Pittsburgh, for appellee.

Before BECK, KELLY and HOFFMAN, JJ.

KELLY, Judge.

In this case, we are called upon to determine whether a defendant must be informed of the possibility of a mandatory sentence before his waiver of a jury trial can be considered

voluntary and intelligent. We hold that appellee, Richard Golinsky,[1] validly waived his right to a jury trial although neither the Commonwealth nor his attorney nor the trial court informed him that the mandatory sentencing provisions of 18 Pa.C.S.A. § 7508 might be applied to him if he were found guilty. Accordingly, we reverse the trial court's order which granted appellee a new trial after he was found guilty at a bench trial.

The facts and procedural history of this case may be summarized as follows. On September 6, 1989, appellee was arrested and charged with several drug offenses. Represented by counsel, appellee went to trial on July 20, 1992. The trial court explained to appellee the charges which the Commonwealth had included in the information:

Q. The Commonwealth of Pennsylvania has filed a Criminal Information against you. In the first count and the third count you are charged with possession of a controlled substance, LSD in the first count and oxycodone in the third count. These are both misdemeanors, punishable by one year in jail and/or a fine of $5000 on each count.

Do you understand that?

A. Yes sir.

Q. The second count is possession with intent to deliver LSD, the second and the fourth counts. These are both felonies, and they are punishable by up to five years in jail and/or fines of $15,000 on the LSD and 15 years and $250,000 on the oxycodone.

Do you understand that?

A. Yes, sir.

N.T. July 20, 1990 at 4. The trial court went on to explain that appellee had a right to a jury trial and informed appellee that the jury would be chosen from a panel of randomly selected Allegheny County citizens, id. at 6, that appellee

---

1. Although this case was originally captioned as *Commonwealth of Pennsylvania v. Golensky,* the correct spelling of appellee's last name is "Golinsky." *See, e.g.,* R.R. at 16a (appellee's signature).

would participate in the selection of twelve people, *id.* and that the jurors would have to be unanimous in their verdict, *id.* at 7. Appellee waived his right to be tried by a jury. *Id.* at 8.

At the bench trial, the court found appellee guilty of all four charges. *Id.* at 41. The Commonwealth then announced its intent to proceed pursuant to mandatory sentencing provisions. *Id.* On September 28, 1990, the Commonwealth filed written notification of its intention to proceed pursuant to the mandatory sentencing provisions of 18 Pa.C.S.A. § 7508.

On August 8, 1991, appellee retained new counsel and filed post-trial motions *nunc pro tunc,* contending that he did not knowingly and voluntarily waive his right to a trial by jury and that trial counsel was ineffective for failing to inform appellee that he was subject to mandatory sentencing provisions. The trial court held an evidentiary hearing on January 27, 1992 and granted appellee a new trial on May 12, 1992. The Commonwealth timely appealed.

On appeal, the Commonwealth argues:

BECAUSE HE DID NOT RELINQUISH ANY RIGHTS PERTINENT TO SENTENCING BY HIS JURY TRIAL WAIVER, THERE IS NO MERIT TO THE CLAIM THAT HIS LACK OF AWARENESS OF THE APPLICABILITY OF A MANDATORY SENTENCE MADE IT INVOLUNTARY.

Commonwealth's Brief at 6. We agree.

 In reviewing an order granting a new trial, we will reverse only if the trial court abused its discretion or committed an error of law. *Commonwealth v. Byng,* 364 Pa.Super. 636, 640, 528 A.2d 983, 985 (1987), citing *Commonwealth v. White,* 482 Pa. 197, 199, 393 A.2d 447, 448–49 (1978). Pursuant to this standard, we address the Commonwealth's argument.

A defendant has the right to waive a jury trial; this waiver must be knowing and intelligent as evidenced by the colloquy. Pa.R.Crim.P. 1101, 42 Pa.C.S.A., *Commonwealth v. Williams,* 310 Pa.Super. 501, 456 A.2d 1047 (1983). Cases have also interpreted Rule 1101 to require a waiver to be

knowing and voluntary. *Id.* To be valid, the waiver must
be an intentional relinquishment or abandonment of a
known right or privilege, and the accused must be aware of
the "essential protections inherent in a jury trial as well as
the consequences attendant upon a relinquishment of those
safeguards." *Commonwealth v. Quarles,* 310 Pa.Super. 74,
79, 456 A.2d 188, 191 (1983), *citing Commonwealth v. Mo-
rin,* 477 Pa. 80, 383 A.2d 832 (1978). The essential ingredi-
ents in a jury trial, which are necessary to understand the
significance of the right a defendant is waiving include: the
jury will be chosen from members of the community, the
verdict will be unanimous, and the accused will be allowed to
participate in the selection of the jury panel. *Common-
wealth v. Lott,* 398 Pa.Super. 573, 581 A.2d 612 (1990);
*Commonwealth v. Williams,* 454 Pa. 368, 312 A.2d 597
(1973).

*Commonwealth v. Hayes,* 408 Pa.Super. 314, 318–19, 596 A.2d
874, 876 (1991). *See also Commonwealth v. Dunn,* 424 Pa.Su-
per. 521, 522–24, 623 A.2d 347, 348 (1993), citing *id.* (listing
three elements which defendant must know before he can
waive jury trial). An allegation that a defendant was not
informed of an element which is not one of the three elements
above does not render the defendant's waiver of a jury trial
unknowing or involuntary. *See Commonwealth v. Madison,*
271 Pa.Super. 382, 388, 413 A.2d 718, 721 (1979) ("There is no
prophylactic rule which requires that a defendant be informed
of all the procedural steps which come into play after he
knowingly and voluntarily relinquishes his right to be tried by
a jury."). *See also Hayes, supra* 408 Pa.Super. at 319, 596
A.2d at 876, citing *Commonwealth v. Quarles,* 310 Pa.Super.
74, 456 A.2d 188 (1983) and *Commonwealth v. Pollard,* 288
Pa.Super. 20, 430 A.2d 1192 (1981) (although colloquy did not
inform defendant that Commonwealth had to prove guilt be-
yond reasonable doubt, his waiver of jury trial was not un-
knowing or involuntary).

The Pennsylvania Supreme Court has expressly refused to
add to the three essential elements which must be known
before a waiver of a jury trial can be valid. In *Common-*

*wealth v. Boyd,* 461 Pa. 17, 334 A.2d 610 (1975), the Court rejected the defendant's argument that his jury waiver was "not knowingly and intelligently made because he was not advised on the record of the possible prison sentences which he might receive if convicted." *Id.* at 25, 334 A.2d at 614. The possible sentence a defendant might receive was held not to be an essential ingredient for a waiver of a jury trial. *Id.* at 26, 334 A.2d at 615.

The Court distinguished the waiver of two rights: the right to a jury trial and the right to a trial. Waiving a jury trial does not affect the court's sentencing alternatives, and the trial court need not inform the defendant of the sentencing alternatives. *Id.* However, when a defendant *pleads guilty,* he must be made aware of the consequence which necessarily follows, sentencing. *Id.* at 26 n. 9, 334 A.2d at 615 n. 9.[2]

This Court has followed the principles explained in *Commonwealth v. Boyd, supra.*

> Appellant asserts that counsel was ineffective for failing to object to the colloquy in which he waived his right to trial by jury. According to appellant, the colloquy was defective because the court did not inform him of the possible sentences he could receive. Our Supreme Court has rejected an identical claim. *Commonwealth v. Boyd,* 461 Pa. 17, 334 A.2d 610 (1975). Thus, trial counsel was not ineffective on this issue.

*Commonwealth v. Jones,* 272 Pa.Super. 444, 449, 416 A.2d 539, 542 (1979).

Furthermore, the sentencing statute which provides for a mandatory minimum sentence in the instant case is consistent with the foregoing authorities. In relevant part, the statute provides: "Notice of the applicability of this section to the defendant shall not be required prior to conviction, but reason-

---

**2.** We note that this Court has resisted invitations to add to the list of inquiries necessary for a valid guilty plea. *See, e.g., Commonwealth v. Harvey,* 407 Pa.Super. 545, 595 A.2d 1280 (1991), *allocatur denied,* 530 Pa. 652, 608 A.2d 28 (1992) (guilty plea colloquy need not inform defendant of possibility of severing consolidated charges).

able notice of the Commonwealth's intention to proceed under this section shall be provided after conviction and before sentencing." 18 Pa.C.S.A. § 7508(b). Furthermore, the Commonwealth possesses "sole discretion to invoke the provision under [18 Pa.C.S.A. § 7508]." *Commonwealth v. Biddle,* 411 Pa.Super. 210, 211–12, 601 A.2d 313, 314 (1991). Therefore, when a trial court advises a defendant of what rights a jury trial involves, no one but the Commonwealth knows whether the Commonwealth would seek a mandatory sentence.

There is a related, yet narrow and different, situation which renders a waiver of jury trial involuntary. In *Commonwealth v. Carey,* 235 Pa.Super. 366, 340 A.2d 509 (1975), the majority defined the issue before the Court as follows:

> Here, appellant does not contend that counsel did not advise him of, or that for some other reason he did not understand the nature of, his right to a jury trial. Rather, his contention is that instead of waiving that right willingly, he waived it only because his counsel assured him that if he did waive it, his sentence would be no more than 6 to 23 months.
>
> * * * * * *
>
> However, appellant does not claim that he waived his right to a jury trial because of any promise made to him by the district attorney or the court; he claims he did it because of a promise made to him by his counsel.

*Id.* at 371, 340 A.2d at 511.[3] The Court stated that in order for the defendant to obtain relief, he would have to introduce evidence which corroborated his assertion of an involuntary waiver; otherwise, the waiver would be upheld. *Id.* at 372–73, 340 A.2d at 511. The defendant's counsel testified "[I] shoved the waiver down the defendant's throat, I say very frankly to this court, I led him to believe, I led him to the primrose path, that he wasn't going to get more than six months." *Id.* at 374,

---

3. In *Carey,* the court relied upon a guilty plea case, *Commonwealth v. Baldwin,* 219 Pa.Super. 153, 280 A.2d 654 (1971), to inject the principal that a waiver of a jury trial may be set aside if the advice of counsel was based upon inadequate or erroneous information about sentencing. *Commonwealth v. Carey, supra* 235 Pa.Super. at 372, 340 A.2d at 511, citing *Commonwealth v. Baldwin, supra.*

340 A.2d at 512. Presented with a record which included counsel's testimony and other corroborative evidence, the Superior Court concluded that appellant's waiver of his right to a jury trial was involuntary because he relied upon counsel's misrepresentation. *Id.*

Relying upon *Commonwealth v. Carey, supra,* this Court in another case reasoned that "the voluntariness of a waiver may be vitiated by misrepresentation as to sentencing if the defendant is shown to have relied on the misrepresentation when making the decision to waiver a jury trial." *Commonwealth v. Byng,* 364 Pa.Super. 636, 639, 528 A.2d 983, 985 (1987), citing *Commonwealth v. Carey, supra.* In *Byng,* however, we held that the defendant did not establish his burden of showing both a misrepresentation as to sentencing and reliance on the misrepresentation.

> Here, the lower court found that its misrepresentation of the range of sentences appellee might receive presumptively rendered the waiver of the right to trial by jury involuntary. Lower Court Opinion at 9. We reject such a *per se* rule. Because there was no showing that appellee *relied* upon the court's misrepresentation in waiving his right, the lower court finding was an abuse of discretion. *Commonwealth v. Carey, supra,* [235 Pa.Super.] at 372, 340 A.2d at 511. Such a showing of reliance upon the misrepresentation is necessary because, although sentencing options may play a role in defendant's decision to waive his right to a jury trial, such information is not essential to an understanding of the nature of the right waived. *Commonwealth v. Boyd,* 461 Pa. 17, 25–26, 334 A.2d 610, 615 (1975). Under this rationale, a defendant must show that a court's misstatement regarding sentencing had a direct effect upon his decision to waive his right to a jury trial.

*Commonwealth v. Byng, supra* 364 Pa.Super. at 640, 528 A.2d at 985.

Pursuant to the above principles, the trial court in the instant case had no duty to advise appellee that if he were found guilty by the judge, he would face mandatory sentences. Therefore, appellee was not entitled to a new trial based upon

the lack of notice that he could face a mandatory minimum sentence if he were eventually found guilty and if the Commonwealth decided to apply 18 Pa.C.S.A. § 7508.

Because the trial court mentioned the sentences which could have followed a guilty verdict, we review the record to determine whether appellee established both a misrepresentation by the trial court and his reliance upon such misrepresentation. Appellee does not aver that the trial court promised a lenient sentence in exchange for his waiver of a jury trial. Instead, appellee argues that he was entitled to a disclosure that if he were found guilty by the trial judge, he would be subject to certain mandatory minimum sentences. Appellee further contends that the trial court's statement that "these are both felonies and are punishable by up to five years in jail and/or fines ...," N.T. July 20, 1990 at 4, perpetrated an idea that the trial court maintained discretion and flexibility and was not compelled to sentence appellee to prison. The trial court agreed that appellee was not sufficiently informed. We cannot.

█ The trial court merely stated that the crimes of possession with intent to deliver LSD and oxycodone "are punishable by up to five years in jail and/or fines of $15,000 in the LSD and 15 years and $250,000 on the oxycodone." N.T. July 20, 1990 at 4. That statement is an accurate depiction of what the maximum sentences could be. See 35 P.S. §§ 780–113(f)(2), (1). If appellee were found guilty of possession with intent to deliver, then the harshest sentence which he could have received would be both jail time and monetary fines. The trial court did not promise appellee that he would receive a sentence which was less than the mandatory minimum in exchange for appellee's waiver of his right to trial by jury. Thus, the trial court did not misrepresent anything to appellee.

█ Even if the trial judge's reference to the maximum penalty could be construed as a misrepresentation, appellee did not establish that he relied on a misstatement. At the post-trial motion hearing, appellee claimed that he would not

have waived his right to a jury trial had he been informed that he would be subject to a mandatory minimum sentence.

[DISTRICT ATTORNEY]: I have a question for Mr. Golensky. [sic]. Why is it that you in retrospect or why is it that you think a jury trial would be better for you?

THE DEFENDANT: That's 12 people just like me. They can hear and decide for themselves. I was told if the judge would hear my case and that I was never in trouble before, he would take that into consideration.

I signed so many papers. A lot of things told to me went right through my head.

[DISTRICT ATTORNEY]: Why would you have had a better chance in front of a jury than you would have had in front of a judge?

THE DEFENDANT: They would hear it and decide. N.T. January 27, 1992 at 8–9. Appellee's counsel did not corroborate this testimony as required by *Commonwealth v. Carey, supra.* Instead, counsel stated that she did not remember whether she had advised appellee that he could face a mandatory minimum sentence. *See* N.T. January 27, 1992 at 17 ("My policy is to, but I don't know. I can't say for a fact.").

■ Appellee's mere assertion, that he would not have waived his rights had he been informed of a mandatory minimum sentence upon his possible conviction by a judge, does not establish that he relied upon the judge's mention that the maximum sentence possible would be up to five years in jail and/or a $5,000.00 fine. Appellee's statement merely reflects that he wished that a jury had tried him because he could not have fared worse than he had in the bench trial where he was found guilty of all four charges. Appellee does not explain why he would have opted for a different forum had he been informed that he would receive jail time.[4] Indeed,

4. Appellant implies that he would eventually be subject to a sentence which did not include the mandatory minimum sentence in 18 Pa. C.S.A. § 7508 if he had been tried in front of a jury. Such an assertion is spurious. The statute is implemented in such a way that the arbiter of guilt or innocence should not be informed about the consequences of a guilty verdict. *Cf. Commonwealth v. Moore,* 373 Pa.Super. 603, 612–

when appellee waived his right to a jury trial, he was on notice that he could have been sentenced to the statutory maximums which were far greater than the mandatory minimums which the Commonwealth sought. Therefore, appellee did not establish that he relied upon a misrepresentation by the court.[5] *See Commonwealth v. Scott,* 345 Pa.Super. 86, 89, 497 A.2d 656, 658 (1985) ("When appellant agreed to waive the jury, he already knew" that sentence which he received was possible.).[6]

13, 542 A.2d 106, 111 (1988) (applying 18 Pa.C.S.A. § 9712—sentences for offenses committed with firearms). This statute, therefore, shows the General Assembly's understanding that the question of guilt is not relevant to the punishment which a guilty defendant receives.

> The function of the jury is to determine guilt or innocence. According to the Pennsylvania Supreme Court "the jury has nothing to do with the punishment of an offense, ... [i]n all other instances, punishment is a matter solely for the court and not for the jury to know or consider during its deliberations." *Commonwealth v. Lucier,* 424 Pa. 47, 49, 225 A.2d 890, 891 (1967). *See also Commonwealth v. Waters,* 334 Pa.Super. 513, 522, 483 A.2d 855, 860 (1984); *Commonwealth v. Dombrauskas,* 274 Pa.Super. 452, 457, 418 A.2d 493, 496 (1980).

*Commonwealth v. White,* 350 Pa.Super. 457, 504 A.2d 930 (1986).

In the instant case, the trial court happened to be unaware that the defendant, if found guilty, would have been subject to a mandatory jail sentence. *See* N.T. January 27, 1992 at 3. Therefore, whether appellee was tried by a jury or by the judge, he would have been before a forum which was concerned with one question: did the Commonwealth prove beyond a reasonable doubt that appellee committed the crimes with which he was charged? Hence, even though appellee baldly alleges that he would have preferred a chance to face jurors, such a plea represents only a wish to have a second chance; it does not rest upon any logical or reasonable basis that he would have strategized differently if, upon conviction, he would surely go to jail. To paraphrase our rationale in *Commonwealth v. Moore, supra,* appellee's argument fails to establish that he would have garnered an advantage by electing to be tried by a jury. *Id.* 373 Pa.Super. at 614, 542 A.2d at 111.

5. The trial court did not base its holding upon the fact that he stated what the maximum sentences could be. Instead, the court expressed its belief that appellee had a right to be told of any mandatory minimum sentences before he waived his right to a jury trial. *See* N.T. January 27, 1992 at 13 ("it would seem to me if mandatory sentence is in the case, we ought to be telling the defendant that right up front").

6. In *Commonwealth v. Scott, supra,* we also explained:

> The [trial] judge did not, however, commit error in stating that a conviction for third-degree murder carried a ten to twenty year sentence. At the time of the jury waiver colloquy the judge had no knowledge of appellant's previous murder convictions. It can hardly

Furthermore, during the colloquy, and after the court's mention of maximum sentences, appellee responded in the negative to the following question: "Has anybody promised you anything, threatened or coerced you in any way to get you to do this?" N.T. July 20, 1990 at 8. Hence, any assertion that appellee relied upon a promise of a lenient sentence is belied by the record. For this reason also, appellee did not rely upon any alleged misrepresentation by the trial court.

■ Appellee's case does not come within the exceptions delineated in *Commonwealth v. Byng, supra* and *Commonwealth v. Carey, supra.* Instead, his was an ordinary waiver of jury trial which is valid when three essential elements are met. Those elements were explained to appellee, *see* N.T. July 20, 1990 at 5–9, and appellee does not contend otherwise. Appellee's right to a jury trial was knowingly and voluntarily waived despite the failure of either the trial court or counsel or the Commonwealth to explain the mandatory minimum sentences to him before he waived his right to a jury trial. *See Commonwealth v. Boyd, supra.* The trial court erred in concluding that appellee's waiver was infirm because appellee was not informed of the sentences he would face if he were found guilty and if the Commonwealth sought a sentence pursuant to 18 Pa.C.S.A. § 7508.[7] Hence, we reverse the order granting appellee's post-trial motions.

Order reversed.

be said that the court was in error in not informing appellant about the enlargement of sentence when the record of appellant's prior convictions was not before the court.

*Id.* at 88–89, 497 A.2d at 657–58. Likewise, in the instant case, the trial court "had no idea what the amount of drugs [was] going to be." N.T. January 27, 1992 at 3. Therefore, as in *Commonwealth v. Scott, supra,* the trial court cannot be held to have misinformed appellee because the court did not know that appellee was being charged with a crime that might require a mandatory sentence. As we discussed above, a court, as trier of fact, has no need to know the eventual sentence which the defendant would face if it found the defendant guilty. And, given the Commonwealth's discretion to apply the sentence, the court could not know for sure that it would apply. *Commonwealth v. Biddle, supra.*

7. Likewise, appellee did not receive ineffective assistance of counsel. *See Commonwealth v. Jones, supra* (counsel not ineffective for failing to object to colloquy at waiver of jury trial where colloquy did not advise

defendant of sentencing possibilities). As we have discussed above, the colloquy in the instant case addressed the three essentials. Moreover, appellee did not establish that counsel or the court made material misrepresentations upon which he relied.